**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CATHERINE H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-1727-JSD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Catherine H. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) For the reasons stated herein, the Court reverses the Commissioner's denial of Plaintiff's application.

### I. BACKGROUND

On August 2, 2023, Plaintiff applied for DIB, alleging disability beginning July 12, 2022, based on, *inter alia*, diabetes, peripheral neuropathy, plantar fasciitis, leg pain, carpal tunnel, left ulnar nerve neuropathy, anxiety, and depression. (Tr. 177-81, 230.) Her application was initially denied on December 18, 2023 (Tr. 108-12), and denied upon reconsideration on February 6, 2024

(Tr. 114-17). Thereafter, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 120-21.)

ALJ Lori Imsland held a hearing over video conference on July 17, 2024. (Tr. 41-71.) As relevant, Plaintiff testified as follows: her work experience since 2009 has primarily been in cybersecurity; she has issues with memory and concentration; she has fatigue due to poor sleep from pain; and she believes her pain and mental issues – including depression, anxiety, shortness with others, memory issues, and slurred speech – caused her termination from her last position in cybersecurity. (Tr. 51-61.) A Vocational Expert ("VE") testified that Plaintiff's past relevant positions were classified as skilled work, with specific vocational preparation scores ("SVP") of 7 or 8. (Tr. 62-64.) The ALJ presented the VE with hypothetical physical limitations, and the VE testified that someone under those physical limitations could perform Plaintiff's past jobs. (Tr. 64-67.) However, the ALJ did not question the VE, nor did the VE testify, about the mental abilities required for such skilled work or whether someone with hypothetical mental impairments could perform those skilled jobs. (*Id.*)

The ALJ issued an unfavorable decision on September 16, 2024. (Tr. 21-35.) Plaintiff timely filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 7-13, 174-75), which was denied on April 21, 2025 (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration. The Court accepts the facts as set forth in the parties' briefing and will cite specific portions of the transcript as needed to address the parties' arguments.

## II. Standard for Determining Disability Under the Act

To be eligible for benefits under the Social Security Act, a claimant must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611. Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other

jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that: Plaintiff had not engaged in substantial gainful activity since July 12, 2022, the alleged onset date; Plaintiff had the severe impairments of left shoulder impingement syndrome and mild degenerative joint disease, cubital tunnel syndrome, status post left ulnar nerve decompression, degenerative joint disease of the hips and sacroiliac joints, plantar fasciitis, diabetes mellitus, and obesity; Plaintiff's medically determinable mental impairments of depression and anxiety were non-severe, as they caused no more than mild limitations in several functional areas – including interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself – and the evidence does not indicate more than minimal limitation of Plaintiff's ability to do basic work activities; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 27-28.)

The ALJ next found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb; only occasionally crawl; is limited to occasional exposure to vibration, unprotected heights, and hazardous machinery; and she can frequently handle and finger with the left upper extremity.

(Tr. 29.) The ALJ further found that Plaintiff was capable of performing past relevant work as a Data Security Coordinator, Security Consultant, and Security Manager. (Tr. 33.) Thus, the ALJ found that Plaintiff was not under a disability, as defined in the Act, from July 12, 2022, through the date of the ALJ's decision. (Tr. 34.)

## IV. Discussion

Plaintiff challenges the ALJ's decision, arguing that the ALJ failed to account for Plaintiff's mild mental limitations in the RFC, or otherwise explain their omission, and failed to evaluate whether Plaintiff's mental impairments impacted her ability to perform her skilled past relevant work. (ECF No. 8.) Plaintiff contends that if her past work is precluded, then the ALJ failed to meet the Commissioner's burden, as the ALJ did not identify alternative work that Plaintiff might be able to perform if unable to perform her past work.[1] (*Id.*) Plaintiff states that she is not challenging the ALJ's weighing of the evidence; rather, she argues that these are legal errors requiring reversal without deference to the ALJ. (*Id.* at 14.) In response, the Commissioner argues that the ALJ explicitly discussed evidence related to Plaintiff's mental impairments when making the RFC determination, and that substantial evidence supports the decision not to include mental limitations in the RFC. (ECF No. 13.) Notably, the Commissioner does not address Plaintiff's argument regarding the skill level required for her past relevant work compared to the skill level accounted for in the mental functional areas, other than to assert that the ALJ was entitled to rely on the VE's testimony. (*Id.* at 7.) Plaintiff replied, clarifying that she is not challenging the ALJ's decision as not supported by substantial evidence and arguing that, to the extent that the ALJ discussed evidence related to Plaintiff's mental impairments, such evidence and discussion lacked any information related to Plaintiff's abilities in her skilled past work. (ECF No. 14.)

In evaluating the severity of a claimant's mental impairments at Step Two, the ALJ is required to use a "special technique." *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing

---

[1] Plaintiff also argues that her ability to perform past relevant work is critical to the outcome, as Plaintiff was in a "person of advanced age," implicating the Medical-Vocational Guidelines, or "grid rules," in this case, citing 20 C.F.R. §§ 404.1563(e), 404.1568(d)(4). (ECF No. 8 at 3-4.)

20 C.F.R. § 404.1520a); *Haggett v. Colvin*, No. 1:12-CV-169-NAB, 2014 WL 107847, at *2 (E.D. Mo. Jan. 10, 214). As relevant, "[t]he special technique analysis requires…rating the degree of functional limitation resulting from the impairment." *Haggert*, 2014 WL 107847, at *2 (citing 20 C.F.R. § 404.1520a(b)). The ALJ is to rate the degree of the claimant's limitation based on the four following broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See Rehkop v. Saul*, No. 1:20-cv-00007 SRC, 2021 WL 1060110, at *3 (E.D. Mo. Mar. 18, 2021); 20 C.F.R. § 404.1520a(c)(3). "After the degree of functional limitation from the impairment is rated, the severity of the mental impairment is determined." *Haggert*, 2014 WL 107847, at *2 (citing 20 C.F.R. § 404.1520a(d)). "An impairment or combination of impairments is not severe if it does not cause more than a minimal limitation on an individual's ability to perform physical or mental basic work activities." *Draves v. Saul*, No. 19-05026-CV-SW-GAF-SSA, 2020 WL 13517528, at *2 (W.D. Mo. Oct. 6, 2020) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

"[A] determination of 'non-severe' is not necessarily the end of [the ALJ's] inquiry. Instead, when crafting the RFC, the ALJ must also consider the combined effect of all of the claimant's impairments, without regard to whether any one impairment would be sufficiently severe to be disabling if considered separately." *Spencer v. O'Malley*, No. 4:23-CV-306-RHH, 2024 WL 551637, at *4 (Mo. E.D. Feb. 12, 2024) (citing *Presson v. Saul*, Case No. 4:20 CV 516 SRW, 2021 WL 2554215, at *4 (E.D. Mo. Jun. 22, 2021)). Moreover, in assessing a claimant's RFC, an ALJ must consider both severe and non-severe impairments. *See Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016). However, there is no requirement that an ALJ includes mental functioning limitations in the RFC when they find mild mental impairment. *See Sandra Y. v. O'Malley*, No. 4:24-CV-1531,

2025 WL 1568215, at *5 (E.D. Mo. Jun. 3, 2025) (citation omitted). Rather, the Court looks to whether the ALJ's findings in Step Two, as to the degree of mental impairment, can be "harmonized" with the RFC and Step Four determination on whether a plaintiff can perform her past skilled work within the parameters of the RFC. *See Hammer v. O'Malley*, No. 2:23-CV-28, 2024 WL 4345755, at *5 (E.D. Mo. Sep. 30, 2024) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018)); *Sandra*, 2025 WL 1568215, at *5-7.

Here, the ALJ applied the special technique in Step Two to find that Plaintiff's medically determinable mental impairments of anxiety disorder and mood disorder, considered singly and in combination, do not cause more than minimal limitation in her ability to perform "basic mental work activities" and are therefore non-severe. (Tr. 27.) In finding the impairments non-severe, the ALJ assessed mild limitations in the functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 28). In interacting with others, the ALJ considered Plaintiff's statements that she spends time with others in person, attends church weekly, and has lunch with friends after church, but she has problems getting along with family, friends, neighbors, or others especially when she is stressed; and medical records noted Plaintiff as pleasant and cooperative with euthymic mood throughout the record. (*Id.*) In concentrating, persisting, or maintaining pace, the ALJ considered that Plaintiff indicated in her Functional Report that she can pay attention for ten minutes and does not finish what she starts; during her evaluation for memory, she was noted to have adequate attention; and her task persistence was generally good but she became frustrated with her performance on some tasks. (*Id.*) In adapting or management oneself, the ALJ considered Plaintiff's indications in the Functional Report that she is able to care for her teenagers, dress, bathe, groom herself, prepare

meals daily, drive a car, go out alone, shop in stores, and handle money, and her indication that she does not handle stress well but can handle changes in routine "ok[ay]." (*Id.*)

Although not argued by Plaintiff, this Court finds that the ALJ's determinations as to the degree and severity of Plaintiff's mental impairments are supported by substantial evidence, given the record as a whole and the ALJ's consideration of Plaintiff's subjective complaints, Functional Report, treatment records, and examination findings. *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ("Substantial evidence … means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.).

The ALJ also discussed Plaintiff's mental impairments in the RFC determination. In evaluating the consistency of Plaintiff's subjective complaints with the evidence in the record, the ALJ reviewed Plaintiff's testimony that, at her most recent job, she had a lot of anxiety which made her short and curt with others, and she had problems with slurred speech in meetings and issues with her memory. (Tr. 30.) The ALJ also discussed 2023 physical consultation examination notes showing that Plaintiff exhibited normal mood and affect; was conversational and cooperative; exhibited intact long and short-term memory; and was able to follow the conversation and multi-step directions without difficulty, demonstration, or redirection. (*Id.*) Later in the RFC discussion, the ALJ deemed persuasive the mental State agency consultants' findings that Plaintiff did not have a severe mental impairment. (Tr. 33.) The ALJ stated that their findings were supported by Plaintiff's normal performance across measures of memory/learning, attention, language, spatial skill, and executive/reasoning abilities, and were consistent with the mental health treatment record showing Plaintiff's anxiety and depression to be controlled with medication. (*Id.*) Following the RFC discussion, in Step Four, the ALJ found that in comparing the RFC with the physical and mental demands of Plaintiff's past work, Plaintiff is capable of

performing her past relevant work as a Data Security Coordinator, Security Consultant, and Security Manager. (Tr. 34.)

To the extent that Plaintiff argues that the ALJ was required to include mental limitations in the RFC simply due to a finding of mild mental limitations at Step Two, such argument has been rejected by Courts within the Eighth Circuit. *See Sandra*, 2025 WL 1568215, at *5 ("The fact that the ALJ concluded for purposes of step two that [the plaintiff]'s mental impairments were 'mild' and not 'none' does not mean that an RFC must include mental functioning limitations." (quoting *Kelly T. v. Kijakazi*, No. 20-cv-1915, 2022 WL 507609, at *4 (D. Minn. Jan. 26, 2022)) (cleaned up).

As to Plaintiff's arguments related to the cognitive functioning required for her specific past relevant work, to be sure, this Court finds that Plaintiff's jobs as a Data Security Coordinator, Security Consultant, and Security Manager – all of which have an SVP of 7 or 8 – are considered skilled work. *See Program Operations Manual System* ("POMS") § DI 25001.001(A)(77) (SVP level of 5 to 9 classified as skilled work).[2] Despite this, the ALJ's RFC assessment and finding that Plaintiff can perform past relevant work do not acknowledge the mental demands of Plaintiff's past skilled work, nor do they explain how Plaintiff's mild limitations in performing basic work translate to her ability to perform more mentally demanding skilled past work. *See Griffith v. O'Malley*, No. 1:23-CV-35, 2024 WL 4274855, at *4-5 (E.D. Mo. Sep. 24, 2024) ("Though an ALJ is not required to discuss each specific piece of evidence in the record when making a disability determination, he must still provide a logical bridge between the RFC and the evidence.") (citation omitted).

[2] *See* https://secure.ssa.gov/poms.NSF/lnx (last visited Oct. 21, 2026).

Basic work mental activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b)(3)-(6); *see also Griffith*, 2024 WL 4274855, at *4. In contrast, skilled work requires a higher level of cognitive functioning, as it "often present[s] 'an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others.'" *Giffith*, 2024 WL 4274855, at *4 (quoting POMS § DI 25020.010(B)(4)(b) (emphasis in original)). Skilled work may also require "[o]ther special abilities…depending upon the type of work and specific function it involves." POMS § DI 25020.010(B)(4)(c). Further, "[s]killed work requires good cognitive functioning," that "requires high levels of judgment and adaptability, involves setting realistic goals or making plans independently; requires understanding, carrying out, and remembering complex instructions; and encompasses abstract ideas and problem solving." *Id.* § DI 25001.001(A)(77). Additionally, "[s]killed job functions require both: [w]ork activity exercising judgment beyond carrying out simple duties; and [k]nowledge of principles and processes of an art, science, or applied trade and the ability to apply that knowledge in a proper and approved manner." *Id.*

Despite the more complex mental requirements of skilled work, the ALJ did not acknowledge these increased demands or discuss whether Plaintiff's mental limitations precluded her from performing her past skilled work. Thus, the ALJ's findings at Step Two cannot be harmonized with the RFC and Step Four determinations because the ALJ is completely silent as to how Plaintiff's mental impairments would, if at all, affect her mental limitations and ability to maintain full-time employment in her past relevant skilled work. *See Sandra*, 2025 WL 1568215,

at *7 (finding Step Two analysis could not be harmonized with RFC assessment because, despite assessment of mild mental limitations, ALJ did not explicitly discuss whether these issues would affect plaintiff's ability to perform past skilled occupations); *Griffith*, 2024 WL 4274855, at *4-5 (finding error and remanding where ALJ failed to assess whether plaintiff retained mental abilities to perform past semiskilled and skilled work; noting that "[i]t is the duty of the ALJ to assess the RFC and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner"); *Spencer*, 2024 WL 551637, at *4-5 (finding error and remanding where the ALJ found mild, non-severe mental impairments but failed to address the impact of such impairments upon the claimant's ability to perform her more skilled past relevant work); *Lilly v. Kijakazi*, No. 4:22-CV-1331, 2023 WL 5951822, at 7-8 (E.D. Mo. Sep. 13, 2023) (directing ALJ on remand to expound upon whether plaintiff was capable of performing past skilled relevant work, where ALJ failed to discuss if plaintiff's ability to do "basic work" would also allow her to perform her past "skilled work").

Notably, Plaintiff cites the above cases – *Sandra*, *Griffith*, *Spencer*, and *Lilly* – in her brief, but the Commissioner does not attempt to distinguish these cases from the facts here. Rather, the Commissioner argues that the ALJ was entitled to rely on the VE's testimony, citing *Gieseke v. Colvin*, 770 F.3d 1186, 1189 (8th Cir. 2014) (in determining whether plaintiff can perform past relevant work, ALJ may rely on a VE's testimony that is "based on a correctly phrased hypothetical that captures the concrete consequences of a claimant's deficiencies.") (quotation omitted). (ECF No. 13 at 7-8.) However, the VE here did not testify about the mental demands of the skilled work or Plaintiff's ability to perform her past skilled work in light of her mental impairments. *See Spencer*, 2024 WL 551637, at *5 (reversing where no discussion in ALJ's decision or in the hearing colloquy between the ALJ and the VE regarding increased mental abilities required to

perform past relevant work, beyond the general acknowledgement of the SVP level, and no specific discussion or finding that plaintiff had mental abilities greater than those necessary to perform basic mental work activities). Moreover, this Court agrees with Plaintiff that her ability to perform her past relevant work is critical to the outcome of this matter, as the ALJ did not alternatively find that, given Plaintiff's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that Plaintiff can perform. *See Brock*, 674 F.3d at 1064 (burden at Step Five is on Commissioner).

Because it is the ALJ's duty to assess the RFC and compare Plaintiff's RFC with the mental demands of a job, the ALJ did not do so here, and the Court may not substitute its judgment for that of the Commissioner, this matter is remanded for proper evaluation of Plaintiff's mental abilities and how they compare to the mental abilities required to perform her skilled past relevant work. *See Griffith*, 2024 WL 4274855, at *5; *Spencer*, 2024 WL 551637, at *5.

## V. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order.

**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 4th day of November 2026.